# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**ANGELA K. P.[1] ,**

        **Plaintiff,**

    **v.**

                                **Civil Action 3:24-cv-272**
                                **Judge Michael J. Newman**
                                **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Angela K. P., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Social Security Period of Disability Benefits, Disability Insurance Benefits ("DIB"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply (ECF No. 10), and the administrative record (ECF No. 7). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability determination and **REMAND** this matter pursuant to Sentence 4 of § 405(g).

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

## I.      BACKGROUND

Plaintiff filed her SSI application on November 9, 2022, and her DIB application on February 13, 2024. Both applications alleged that she became disabled beginning November 4, 2022. After Plaintiff's claims were denied initially and on reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on March 12, 2024, at which Plaintiff, represented by counsel, appeared. (R. 31–64.) A vocational expert ("VE") also appeared and testified at that hearing. On May 10, 2024, the ALJ issued an unfavorable determination. (*Id*. at 17–25.) That decision became final on August 22, 2024, when the Appeals Council declined review.

Plaintiff seeks judicial review of that unfavorable determination and asserts that the ALJ committed three reversible errors. First, Plaintiff contends that the ALJ failed to consider her non-severe mental health impairments when assessing her residual functional capacity ("RFC").[2] (Pl.'s Statement of Errors 8–12, ECF No. 8.) Next, Plaintiff contends that the ALJ failed to fully develop the administrative record. (*Id*. at 13–17.) Last, Plaintiff challenges the ALJ's subjective symptom analysis (*a.k.a.* "credibility determination.") (*Id*. at 17–20.) The undersigned concludes that Plaintiff's second contention of error has merit.

## II.      THE ALJ's DECISION

The ALJ issued the unfavorable determination on May 10, 2024. He initially determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2028. (R. at 19.)

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

At step one of the sequential evaluation process,[3] the ALJ found that although Plaintiff had worked after her alleged onset date of November 4, 2022, she had not engaged in substantial gainful activity since then. (*Id.*) At step two, the ALJ found that Plaintiff's degenerative disk disease was a severe medically determinable impairment. (*Id*. at 20.) The ALJ also found that Plaintiff's fatty liver and mood disorder, including anxiety, were medically determinable but that they were not severe. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.)

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work, as defined in 20 CFR 404.1567(b) and 416.967(c), with frequent climbing of ramps and stairs,

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

reaching with the bilateral upper extremities, stooping, kneeling, crouching, or crawling; and no climbing ladders, ropes, or scaffolds.

(*Id*. at 21.)

At step four, relying upon the testimony of the VE, the ALJ determined that Plaintiff could perform her past relevant work as a dietary aide and a store laborer. (*Id.* at 23.) Alternatively, the ALJ relied on the VE's testimony at step five to determine that a person with Plaintiff's age, education, work experience, and RFC could perform jobs that existed in significant numbers in the national economy including the representative occupations of motor vehicle assembler, floor waxer, and machine packager. (*Id*. at 24.) Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period. (*Id*. at 25.)

## III.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Even though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y*

*Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.     ANALYSIS

As explained above, Plaintiff contends that the ALJ committed three reversible errors. Each contention of error is discussed in turn. One is found to have merit.

## A.     The ALJ's Consideration of Plaintiff's Non-Severe Mental Health Impairments When Assessing Her RFC

Plaintiff first contends that the ALJ failed to properly consider her non-severe mental health impairments when assessing her RFC at step four. (Pl.'s Statement of Errors 8–12, ECF No. 8.) The undersigned is not persuaded.

At step two of the sequential evaluation process, the ALJ evaluates the "medical severity" of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c).

When evaluating the severity of mental health impairments, such as anxiety, an ALJ must apply a "special technique," which involves rating the degree of limitation in four broad

functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). These areas, referred to as the "paragraph B criteria," are rated on a five-point scale: none, mild, moderate, marked, and extreme. *Id*. §§ 404.1520a(c)(4), 416.920a(c)(4). If an ALJ rates the claimant's limitations as "none" or "mild," the mental impairment is generally considered non-severe, absent evidence of more than a minimal limitation in the claimant's ability to perform basic work activities. *Id*. §§ 404.1520a(d)(1), 416.920a(d)(1).

Once an ALJ identifies at least one severe impairment of any type, however, the failure to label other impairments as severe is generally not reversible error. *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). Instead, the relevant question becomes whether the ALJ considered the limiting effects of all impairments—severe and non-severe—when assessing an RFC at step four. *Id. See also* 20 C.F.R. §§ 404.1545(e), 416.945(e). Indeed, Social Security Ruling 96-8p instructs that an ALJ must consider "all of the individual's impairments, including those that are not 'severe'" when assessing an RFC. SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). The Sixth Circuit Court of Appeals has clarified, however, that even where an ALJ does not explicitly reference a plaintiff's non-severe impairments at the RFC assessment stage, an ALJ's analysis may still satisfy SSR 96-8p if the ALJ's determination: (1) refers to SSR 96-8p, (2) discusses the non-severe impairments at step two, and (3) provides assurances that all symptoms and the entire record were considered when assessing an RFC. *See Emard*, 953 F.3d at 851–52. *See also Heather M. v. Comm'r of Soc. Sec.*, Case No. 2:24-cv-1108, 2025 WL 313936, at *4 (S.D. Ohio Jan. 28, 2025) (applying *Emard* standard), *adopted and aff'd*, 2025 WL 520855,

(S.D. Ohio Feb. 18, 2025); *John S. v. Comm'r of Soc. Sec.*, No. 2:22-CV-4207, 2023 WL 6141664, at *1 (S.D. Ohio Sept. 20, 2023) (applying *Emard* standard).

Such is the case here. At step two, the ALJ found that Plaintiff had at least one severe impairment, but that her mood disorder, including anxiety, was not severe. (R. at 20.)[4] Although the ALJ did not discuss Plaintiff's non-severe mood disorder when formulating Plaintiff's RFC at step four, the ALJ explicitly cited SSR 96-8p and the applicable regulations in his summary of applicable law, and he noted that he was required to consider all of Plaintiff's impairments, including non-severe ones, when he assessed her RFC. (*Id*. at 19.) ("In making this [RFC] finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe[.]") (citing 20 C.F.R. §§ 404.1520(e), 404.1545, 416.945, and SSR 96-8p)).

At step two, the ALJ discussed the impact that Plaintiff's mood disorder had on her ability to perform basic work activities as follows:

> Similarly, the claimant's medically determinable mental impairment of a mood disorder, including anxiety, does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.
>
> The claimant testified she has no issues with her memory, no problems being around others, no deficits in handling change or completing her daily activities, and intact concentration, persistence, and pace outside of needing to take notes when there is too much on a page and to make sure she attends her appointments (Hearing Testimony). The record shows the claimant treats her mental health with prescription medication from her primary care provider, not a mental health specialist. Notably, she declined referral to psychiatry (Exhibit 2F). Nevertheless, on examination, she appeared with normal psychiatric findings, such as being alert and cooperative with normal mood and affect outside of anxiousness/tearfulness when discussing her mother's death (Exhibit 2F).

(*Id*. at 20.) The ALJ also evaluated the paragraph B criteria at step two and determined that Plaintiff had only mild limitations in each of the four broad functional areas, writing as follows:

---

[4] Plaintiff does not challenge the ALJ's determination that her mood disorder was not severe.

> In making the finding that the claimant's mental health impairment is nonsevere, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. The next functional area is interacting with others. In this area, the claimant has mild limitation. The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. As previously indicated, the claimant has not required mental health treatment, such as behavioral counseling or psychiatric treatment. The objective psychiatric examination of record indicated that she has normal mood and affect, however, she had anxious mood and was tearful when talking about her mother's death (2F/21; 1F/7). Aside from anxious mood when talking about her mother's death, she has demonstrated normal mental status, including "grossly" normal mood (1F/14). The claimant also testified to having no issues with her memory, no problems being around others, no deficits in handling change or completing her daily activities, and intact concentration, persistence, and pace outside of needing to take notes when there is too much on a page and to make sure she attends her appointments. The evidence indicates no more than mild limitation in any mental health area of functioning. There is no opinion indicating more than mild limitation in mental functioning. Therefore, the claimant's mental impairments are non-severe.

(*Id*. at 20–21.) Moreover, at step two, the ALJ stated that he had "considered all of claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (*Id*.)

Finally, the ALJ provided additional assurances that he considered all of Plaintiff's impairments—when assessing Plaintiff's RFC at step four, the ALJ stated that he considered "the entire record" and "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* at 21.)

In short, the ALJ referred to SSR 96-8p, discussed Plaintiff's non-severe mood disorder at step two, and provided assurances that he had considered all symptoms and the entire record when he assessed Plaintiff's RFC. Accordingly, pursuant to *Emard*, a published and controlling

8

case, the undersigned concludes that the ALJ did not reversibly err by failing to consider Plaintiff's non-severe mood disorder when assessing her RFC even though the ALJ did not discuss it again at the assessment stage. 953 F.3d 851–52. *See also Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1006 (6th Cir. 2025) (relying on *Emard* to find that ALJ did not fail to consider non-severe impairments despite lack of discussion at assessment stage; ALJ acknowledged that he was required to consider all impairments when assessing RFC, including non-severe ones, and ALJ repeatedly stated that all limits were considered); *Turner v. Comm'r of Soc. Sec.*, No. 20-6422, 2021 WL 6275633, at *4 (6th Cir. Sept. 24, 2021) (relying on *Emard* to find that ALJ sufficiently demonstrated that she considered all of plaintiff's impairments despite lack of discussion of non-severe impairments at the assessment stage; ALJ stated that she had conducted a "careful consideration of the entire record" and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence").

Cases from District Courts sitting in the Sixth Circuit cited by Plaintiff do not undermine this conclusion. For instance, in *Lori F.*, this Court remanded a matter where the ALJ, like the ALJ here, did not discuss the plaintiff's non-severe impairments when assessing a plaintiff's RFC at step four. *Lori F. v. Commissioner of Soc. Sec.*, No. 32-CV-319, 2024 WL 898934, at *3 (S.D. Ohio Mar. 1, 2024). But unlike here, it appears that the ALJ in *Lori F.* failed to reference SSR 96-8p or affirm that all of the plaintiff's symptoms and the entire record were considered. *Id*. The Court in *William G.* also found that an ALJ's determination did not sufficiently demonstrate that he had considered a plaintiff's non-severe impairments when assessing a plaintiff's RFC. *William G. v. O'Malley*, No. 3:23-CV-00103-LLK, 2024 WL 1141019, at *3 (W.D. Ky. Mar. 15, 2024). When doing so, however, the *William G.* Court distinguished the

facts in that case from those in another case, *Wardlow*, in part, because the ALJ in *Wardlow* expressly indicated that he had considered a plaintiff's "mild limitations under the 'paragraph B' criteria in forming his RFC determination." *Id*. at 4 (quoting *Wardlow v. Kijakazi*, No. 3:20-CV-00828, 2022 WL 1748607, at *6 (W.D. Ky. May 31, 2022)). Thus, even though the Courts in *Lori F*. and *William G.* did not explicitly reference the *Emard* standard, in both cases, it appears that factors identified by the Sixth Circuit as significant in *Emard* were lacking.

Plaintiff nonetheless contends that because the ALJ found that she had mild limitations in all four paragraph B criteria for mental health impairments at step two, the ALJ was required to explain at step four why no corresponding mental health limitations were included in her RFC. (Pl.'s Statement of Errors 9–11, ECF No. 8; Pl.'s Reply 3–7, ECF No. 10.) Specifically, Plaintiff asserts that the ALJ failed to "adequately explain" an alleged "conflict" between his paragraph B findings at step two and his RFC assessment at step four. (Pl.'s Statement of Errors 9, ECF No. 8.) But in *Emard*, the Sixth Circuit did not find that SSR 96-8p creates such an *articulation* requirement. Rather, the Sixth Circuit recognized that SSR 96-8p only obligates an ALJ to *consider* all of a claimant's impairments when formulating an RFC. And the Sixth Circuit outlined factors a reviewing court should use to determine whether the ALJ has satisfied that obligation. 953 F.3d at 851–52. In light of *Emard*—recently cited by the Sixth Circuit with approval in *Napier*, 127 F.4th 1006—the undersigned declines to adopt the approach urged by Plaintiff.

Moreover, the undersigned is not convinced that Plaintiff has met her burden to show that she required any specific mental health RFC limitation. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (noting that the plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments through step four of the sequential

evaluation process); *see also*, *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). Plaintiff points to evidence that her primary care physician, Dr. Wolters, administered a screening test for anxiety to her. (Pl.'s Reply, 2–3, ECF No. 10.) That screening, however, only speaks to Plaintiff's symptoms and it does not reflect any opined functional limitations. (R. at 327.) Plaintiff does not point to any other record evidence of any specific functional limits related to her mental health impairments and symptoms. *See Laura Q. v. Comm'r of Soc. Sec.*, No. 2:23-CV-131, 2024 WL 1170037, at *7 (S.D. Ohio Mar. 19, 2024) (finding ALJ did not fail to consider a plaintiff's non-severe knee impairment when assessing her RFC despite lack of discussion of it at assessment stage; ALJ's determination met *Emard* standard and plaintiff failed to identify any functional limitations caused by her knee impairment).

For all these reasons, the undersigned does not find that the ALJ reversibly erred by failing to consider Plaintiff's non-severe mood disorder when he assessed her RFC. Accordingly, her first contention of error lacks merit.

**B.    The ALJ's Duty to Further Develop the Record for Plaintiff's Physical Impairments**

Plaintiff additionally contends that the ALJ erred by failing to adequately develop the record of her physical impairments. (Pl.'s Statement of Errors 13–17, ECF No. 8; Pl.'s Reply 8, ECF No. 10.) The undersigned agrees.

A plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 545 (6th Cir. 2007). But an ALJ bears the burden of developing the administrative record upon which a disability determination rests. *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983). An ALJ has a duty to develop the record because "[s]ocial security proceedings—unlike judicial ones—are inquisitorial, not adversarial." *Chester v. Comm'r of Soc. Sec.*, No. 11-1535, 2013 WL

1122571, at *8 (E.D. Mich. Feb. 25, 2013); *see also, Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate facts and develop the arguments both for and against granting benefits.").

An ALJ is not required to base his RFC determination on a medical opinion.[5] *Mokbel-Aljani v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."). *See also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (explaining that requiring an ALJ to base an RFC determination on medical opinions would transfer the statutory responsibility to determine if an individual is under a disability from an ALJ to a medical source). Nor does an ALJ err by relying on medical opinions from physicians who have reviewed an incomplete record if the ALJ considers later evidence and adequately accounts for changes in a claimant's conditions. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (finding no error where an ALJ relied on opinions from state agency reviewers where the ALJ considered later evidence and accounted for relevant changes in the plaintiff's condition).

Even so, pursuant to the so-called *Deskin* rule, an ALJ must obtain opinion evidence to satisfy the duty to develop the record in at least two circumstances. One circumstance arises when an ALJ is required to make medical judgments about a claimant's functional abilities by interpreting raw medical data. *Gonzalez v. Comm'r of Soc. Sec.*, 3:21-cv-000093, 2022 WL 824145, at *8 (N.D. Ohio Mar. 18, 2022) (citing *Alexander v. Kijakazi*, No. 1:20-cv-01549, 2021

---

[5] State agency reviewers' functional assessments are now referred to as "prior administrative findings" rather than "medical opinions." 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)–(5). Given prior case law, developed when the term "medical opinion" included opinions from medical sources and functional assessments from state agency reviewers, the undersigned sometimes uses both terms interchangeably for ease of reference.

WL 4459700, at *9 (N.D. Ohio Sept. 29, 2021) ("Courts are generally unqualified to interpret raw medical data and make medical judgments concerning limitations that may reasonably be expected to accompany such data.") and *Mascaro v. Colvin*, No. 1:16CV0436, 2016 WL 7383796, at *11 (N.D. Ohio Dec. 1, 2016) (noting neither the ALJ nor the court had the medical expertise to conclude whether the results of a neurological exam necessarily ruled out the existence of a disabling condition)), *adopted and aff'd*, 2016 WL 7368676 (N.D. Ohio Dec. 20, 2016)).

Second, a medical opinion must also be obtained when "a 'critical body' of the 'objective medical evidence' is not accounted for by a medical opinion and there is significant evidence of potentially disabling conditions." *Gonzalez,* 2022 WL 824145, at *8 (quoting *McCauley v. Comm'r of Soc. Sec.*, No. 3:20-cv-13069, 2021 WL 5871527, at *14–15 (E.D. Mich. Nov. 17, 2021) (cleaned up)). In that second *Deskin* circumstance, an ALJ should obtain opinion evidence that accounts for the entirety of the relevant period. *Id.* That obligation exists unless the medical evidence shows "relatively little physical impairment" and an ALJ "can render a commonsense judgment about functional capacity." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011) (quoting *Deskin*, 605 F.Supp.2d at 912 (N.D. Ohio 2008) (cleaned up)).

Here, the first *Deskin* circumstance applies. When assessing Plaintiff's RFC, the ALJ noted that the state agency reviewing physicians "concluded that the record contained insufficient evidence to give an opinion." (R. at 23.) And indeed, at the initial review on March 29, 2023, the state agency reviewing physician found that there was insufficient evidence to determine a physical RFC. (*Id*. at 68.) The state agency reviewing physician at reconsideration affirmed that conclusion (*Id*. at 73). Despite this, Plaintiff was never sent for a physical

consultative examination, a medical expert did not testify at her hearing, and none of her care providers offered functional assessments of her physical abilities.

Given that complete absence of medical opinion evidence, the ALJ appears to have improperly interpreted raw medical data when assessing Plaintiff's RFC. *See Colaner v. Comm'r of Soc. Sec.,* No. 12-CV-00716, 2013 WL 5487037, at *4 (S.D. Ohio Sept. 30, 2013) (holding that an ALJ's RFC determination lacked substantial support where the record contained no medical opinion evidence and the ALJ instead interpreted "raw medical data" to assess a plaintiff's RFC); *Doris B. v. Comm'r of Soc. Sec.,* No. 3:23-CV-00598, 2025 WL 676073, at *4 (W.D. Ky. Mar. 3, 2025) (holding that "the ALJ erred here by forming an RFC without obtaining *any* medical opinion evidence for his consideration") (emphasis in original); *Epps v. Comm'r of Soc. Sec. Admin.*, No. 1:23-CV-01462, 2024 WL 3184466, at *9 (N.D. Ohio June 4, 2024), (holding that an ALJ had the responsibility to develop the record further "because there was no medical opinion evidence on [the plaintiff's] functional limitations"), *adopted and aff'd*, 2024 WL 3179664 (N.D. Ohio June 26, 2024); *Falkosky v. Comm'r of Soc. Sec.*, No. 1:19-CV-2632, 2020 WL 5423967, at *7 (N.D. Ohio Sept. 10, 2020) (holding that an ALJ erred where "the ALJ had no medical opinions on [the plaintiff's] functional abilities to evaluate. And any evidence of [the plaintiff's] condition that he cited to support his RFC finding necessarily supported only his own lay conclusion regarding [the plaintiff's] functional capacity.").

The Commissioner protests, contending that the ALJ did not interpret raw data but instead relied on normal clinical findings rather than, for example, "raw numbers and images." (Def.'s Mem. in Opp'n 10, ECF No. 9.) But the cases cited by the Commissioner are distinguishable. In *Rudd*, the Sixth Circuit upheld the ALJ's RFC assessment because it was based on the evaluation and rejection of multiple medical opinions—unlike the present case,

14

where no medical opinions exist. 531 F. App'x at 727. Similarly, in *Kidder*, the court found that an ALJ did not "interpret raw medical data" because "several physicians reviewed the MRI and EMG, and the diagnostic tests." *Kidder v. Comm'r of Soc. Sec.*, No. 1:18-CV-661, 2020 WL 1080413, at *6 (S.D. Ohio Mar. 6, 2020), *adopted and aff'd*, 2020 WL 5201080 (S.D. Ohio Sept. 1, 2020).

Other cases cited by the Commissioner are distinguishable because they involved analysis of the second *Deskin* circumstance. In those cases, courts found no reversible error where an ALJ evaluated uncomplicated medical records submitted after state agency reviewers already provided their RFC findings. *See Robert D. v. Comm'r of Soc. Sec.*, No. 3:23-CV-001, 2023 WL 4348871 (S.D. Ohio July 5, 2023) (finding ALJ did not reversibly err where limits in the RFC did not correspond exactly to a medical opinion; ALJ considered records submitted after reviewers found limits and the newer records did not contain raw medical data) *adopted and aff'd*, 2023 WL 5002369 (S.D. Ohio Aug. 4, 2023); *Shaun B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-02442, 2023 WL 2534217, at *1 (S.D. Ohio Mar. 16, 2023) (finding ALJ did not reversibly err where RFC included stricter limits then the ones found by reviewing physicians; ALJ considered uncomplicated evidence that was made available after reviews); *Michael G. v. Comm'r of Soc. Sec.*, No. 2:21-CV-5467, 2022 WL 11615881, at *8 (S.D. Ohio Oct. 20, 2022) (finding ALJ did not err when considering evidence related to an EMG submitted after reviewers made their RFC findings; ALJ considered a doctor's report summarizing the EMG and not the EMG testing data). But critically, each of those cases involved medical opinions or RFC findings from state agency reviewers—whereas the record here contains no such evidence.

The Commissioner nevertheless contends that no medical opinion was necessary because the evidence showed minimal impairment, and the ALJ was thus able to make a commonsense

judgment about Plaintiff's RFC. (Def.'s Mem. in Opp'n 13, ECF No. 9.) However, the ALJ did not explain how he was able to assess Plaintiff's RFC when two state agency physicians concluded that the record was insufficient for such a determination. The ALJ merely stated that, contrary to the reviewers' opinion, the record was adequate. (R. at 23.) That explanation is insufficient. *Epps,* 2024 WL 3184466, at *9 (finding ALJ erred where "it [was] not clear, and the decision [did] not explain how, the ALJ could make a detailed RFC finding when the reviewing State agency physicians could not"); *Falkosky*, 2020 WL 5423967, at *7 (finding ALJ erred where "[a]bsent from the ALJ's decision is any explanation of how he could make a detailed RFC finding when the reviewing physicians could not").

In any case, it may be more accurate to say that the record does not reflect minimal impairment, but rather a severe impairment—degenerative disc disease, for which Plaintiff had previously undergone spinal fusions—and that she pursued only minimal treatment during the relevant period. But even assuming that the record showed only minimal impairment, it is unclear how the ALJ derived the physical limits he included in Plaintiff's RFC. The ALJ, for instance, noted that examinations showed that Plaintiff had normal gait. (*Id*.) The ALJ did not, however, provide record-based reasons for how or why that resulted in a limit to, for instance, frequent stooping, kneeling, crouching, or crawling. Therefore, it appears that these limits were based on the ALJ's lay interpretations of raw medical data.

The Commissioner also attacks the so-called *Deskin* rule, noting that *Deskin* is not controlling and that it has been criticized by many district courts, including this one. (Def.'s Mem. in Opp'n 11–13, ECF No. 9.) But the evidentiary records in the critical cases cited by the Commissioner, unlike the evidentiary record here, contained medical opinions or state agency reviewer findings. *Lawson v. Comm'r of Soc. Sec.*, No. 1:20-CV-324, 2021 WL 2659176, at *7

16

(S.D. Ohio June 29, 2021), (explaining that the ALJ "expressly relied upon the medical opinions of agency consultants who opined that Plaintiff was capable of a reduced range of light exertional work"), *adopted and aff'd*, 2021 WL 3663649 (S.D. Ohio Aug. 18, 2021); *Pursley v. Comm'r of Soc. Sec.*, No. 1:18-CV-256, 2019 WL 2537291, at *5, 6 (S.D. Ohio June 20, 2019), (explaining that the record contained an opinion from a treating source and a state agency reviewing physician), *adopted and aff'd*, 2019 WL 3430842 (S.D. Ohio July 30, 2019). Therefore, even assuming *arguendo* that the undersigned found these criticisms of *Deskin* persuasive, they would, at most, only undermine the second *Deskin* circumstance, which is inapplicable here, as this case concerns the first *Deskin* circumstance.

To be sure, the undersigned does not suggest that an ALJ's RFC determination must match a medical opinion or finding exactly or a court will find that it lacks support. 531 F. App'x at 727; *Mokbel-Aljahmi,* 732 F. App'x at 401. The Sixth Circuit has clarified that limits included in an ALJ's RFC do not have to mirror limits found in a medical opinion. *Id. See also*, *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (rejecting argument that "an ALJ may not make a work-capacity finding without a medical opinion that reaches the same conclusion"). But the first circumstance described by *Deskin* stands for the proposition that even if a limit included in ALJ's RFC need not correspond exactly to a limit in a medical opinion, an ALJ has sufficiently developed the record when the ALJ has at least *considered* some medical expert opinion evidence when assessing a plaintiff's limits. *Colaner,* 2013 WL 5487037, at *4; *Doris B.,* 2025 WL 676073 at *4; *Epps*, 2024 WL 3184466, at *9; *Falkosky*, 2020 WL 5423967, at *7.

In short, the evidentiary record lacked any medical opinions or administrative findings, and thus, the undersigned concludes that the ALJ was obligated to further develop the record.

17

The ALJ failed to do so, and he instead crafted an RFC based on his own interpretation of raw medical data. As a result, remand is warranted.

## C.    The ALJ's Subjective Symptom Analysis

Plaintiff last contends that the ALJ erred when performing a subjective symptom analysis. The undersigned concludes that this contention lacks merit.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929(c)(1); SSR 16–3p, 2017 WL 5180304, at*10 (Oct. 25, 2017). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all available evidence from medical and nonmedical sources including medical opinions. *Id.* In addition, there are seven factors set forth in SSR 16–3p[6] that

---

[6] SSR 96-7p, 1996 WL 374186 (July 2, 1996) which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.,* 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

an ALJ will consider: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 8) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 2017 WL 5180304 at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Although an ALJ is not required to analyze all seven factors he should show that he considered the relevant evidence. *Roach v. Comm'r of Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021).

The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. SSR 16–3p, 2017 WL 5180304 at *7–8. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10; *cf. Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

The ALJ will also consider whether a plaintiff sought medical treatment and followed prescribed care. SSR 16-3p, 2017 WL 5180304, at *9. Attempts to obtain or follow prescribed treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id.* at 9–10. But an ALJ may draw an adverse inference from a plaintiff's failure to seek or follow treatment only if he

19

both considers and explains the plaintiff's possible reasons for that failure. *Id*. at 10; *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016) (noting that an ALJ must consider the claimant's reasons before inferring that a lack of treatment undermines the claim).

The undersigned finds no reversible error in the ALJ's subjective symptom assessment. The ALJ began by summarizing Plaintiff's symptoms, writing as follows:

> The claimant testified that she cannot work due to a history of spinal fusions (Testimony). She said that she has increased back and neck pain, and that she has tried pain management (Testimony). She testified that she has not been receiving treatment because she did not know what she should be doing, and she declined a referral because she did not want to have a third surgery and was afraid that would be the recommendation (Testimony). She testified she has not had additional treatment since November 2022 (Testimony). The claimant testified that she takes ibuprofen twice per day for pain (Testimony). The claimant testified that she can stand for 30 minutes and sit for 20 to 30 minutes at one time (Testimony).

(R. at 22.) The ALJ then determined that although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the symptoms of the types alleged" Plaintiff's statements about the "intensity, persistence and limiting effects" of her symptoms were not consistent with the record evidence. (*Id*.)

Specifically, the ALJ explained that Plaintiff's failure to seek treatment was inconsistent with her allegations of disabling pain. The ALJ wrote as follows:

> The claimant's lack of treatment is inconsistent with her allegation of debilitating back pain. The claimant reported a past history of neck surgery and ongoing neck pain. Nevertheless, she worked a medium exertion level job after undergoing a second fusion, up until 2021. The claimant denied a referral to an orthopedic specialist. She testified that the reason she denied the referral was because she assumed the recommended treatment level would include another surgery, however, such statement is not reflected in the medical evidence. Moreover, the record does not include conservative care, such as physical therapy or prescription medication management since the alleged onset date. In fact, the claimant conceded she has received no medical care for her spine since her alleged onset date and treats the claimant only with over-the-counter ibuprofen for pain (Testimony). The claimant could not give any other explanation for why she has not required or sought additional treatment for her allegedly debilitating back complaints.

20

(*Id.*) It was appropriate for the ALJ to consider Plaintiff's failure to seek treatment. SSR 16–3p, 2017 WL 5180304 at *9. Moreover, the ALJ considered and explained that Plaintiff's only reason for that failure—fear that treatment would necessarily entail additional surgery—was not reflected in the record. That explanation was supported by substantial evidence as Plaintiff has failed to point to any record evidence to the contrary.

The ALJ also explained that the record contained only "minimal treatment records," and that those that were available showed normal physical functioning. The ALJ wrote as follows:

> The minimal treatment notes of record show normal physical functioning. In 2021, as although (*sic*) the claimant reported right sided neck and shoulder pain radiating into her fingertips, examination showed a normal gait (1F). However, she did not seek any additional treatment for a significant period (1F; 2F). Indeed, treatments notes from 2023 show that the claimant had normal coordination, normal gait, normal sensation, and full, 5/5 strength in her extremities (2F/21). Additionally, her back exam was normal without tenderness and her extremities had full range of motion, no tenderness, edema, or joint swelling (2F/20). The other few notes of record also show normal gait (1F/7, 14; 2F/4). She denied having an abnormal gait, weakness, or numbness to her providers (2F/18). The notes highlight that the claimant smokes marijuana and drinks three to five vodka tonic drinks per week, but she denied any specific liver problems at hearing (Testimony).

(R. at 22–23.) This was also an appropriate consideration. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms); SSR 16-3p, 2017 WL 5180304, at *5 ("A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms."); *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 404 (6th Cir. 2018) (affirming ALJ's decision to discount plaintiff's subjective complaints regarding the severity of pain from her physical impairments in part due to lack of confirming objective evidence).

Plaintiff does not challenge the record-based reasons provided by the ALJ for finding that her allegations of disabling symptoms were not consistent with the record evidence. Instead, Plaintiff contends that the ALJ erred because he failed to "point to any genuine inconsistencies between Plaintiff's testimony and the record." (Pl.'s Statement of Errors 19, ECF No. 8.) But such inconsistencies are merely one of many relevant factors that an ALJ must consider. And an ALJ is only required to discuss those factors that are pertinent based upon the evidence in the record. SSR 16–3p, 2017 WL 5180304 at *7–8. The excerpts above demonstrate that the ALJ considered factors that were pertinent in this case. Accordingly, the undersigned concludes that Plaintiff's contention of error lacks merit.

## V.      CONCLUSION and RECOMMENDED DISPOSITION

For all these reasons, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability determination and that this matter be **REMANDED** for further consideration consistent with this R&R.

## VI.      PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a

waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE